Randall L. Jeffs, #12129
JEFFS & JEFFS, P.C.
90 North 100 East
P.O. Box 888
Provo, UT, 84603
Telephone: (801) 373-8848
Email: rzjeffs@jeffslawoffice.com

*Attorney for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LINDA JOHNSON, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>UHS OF PROVO CANYON, INC, a Delaware Corporation, aka PCS OF DELEWARE, INC., dba PROVO CANYON SCHOOL, PROVO CANYON BEHAVIORAL HOSPITAL, PROVO CANYON RESIDENTIAL SERVICES OF UTAH, PROVO CANYON SCHOOL SPRINGVILL CAMPUS, PROVO CANYON HOSPITAL, ACADEMY AT CANYON CREEK,<br><br>          Defendant. | **COMPLAINT**<br><br><br><br><br><br><br>*Civil No.*: _____<br>     *Judge*: _____ |

COMES NOW Plaintiff Linda Johnson by and through her attorney, Randall L. Jeffs of the law firm Jeffs & Jeffs, P.C., and for cause of action against Defendant UHS of Provo Canyon, alleges and avers as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Linda Johnson is a resident of Washington County, State of Utah.

2. Defendant UHS of Provo Canyon, Inc., also known as Provo Canyon School (hereinafter "PCS") is a resident of Utah County, State of Utah.

3. All events giving rise to the cause of action in this matter occurred in Utah County, State of Utah.

4. This action is brought pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.S. § 621, and the Utah Antidiscrimination Act of 1964 (UADA), U.C.A §34A-5-106, as amended.

## GENERAL ALLEGATIONS

5. Provo Canyon School (hereinafter referred to as 'PCS') is a treatment facility for youth.

6. Plaintiff Linda Johnson was an employee of PCS.

7. On or around September of 1977, Ms. Johnson was hired by PCS as a Student Services Manager when she was 28 years old. She was born on May 4, 1949.

8. Plaintiff was subject to discrimination and harassment based on her age while working at PCS.

9. The age discrimination began on or around the year 2013. It was at this point that PCS began terminating and forcing older employees to retire.

10. For about the next year, an increasing amount of older employees with greater experience were terminated from PCS.

11. Employees were also regularly treated differently based on their age. During a leadership meeting, the CEO separated the employees into groups according to their number of years' experience at PCS.

12. Many employees discussed their belief that these things were happening and their concerns that they would be terminated due to their age and years of experience.

13. Many of these employees were subsequently terminated, forced into retirement, demoted, and/or given a pay cut.

14. The following employees were some of who were terminated or forced into retirement and replaced by younger employees with less experience and a lower salary:

-Jan Purkey, age 58 (Risk Manager);

-Larry Winn, age 63 (Plant Operation);

-Teresa Cisneros, MD, age 58 (Medical Executive Director);

-Dan Walker, age 55 (Therapist);

-Brad Gerrage, age 52 (CEO);

-Sam Hill, late 50/early 60s (Program Director);

-Mary Appelgate, age 64 (Laundry worker).

15. Mr. Winn was terminated after refusing to take a lesser job.

16. There were also two employees who were demoted and/or had a pay cut:

-Sue Brady, age 56 (Student Life Supervisor); and

-Dennis Knapp, age 65 (Director of Plant Operations).

17. Mr. Knapp's hours were reduced to 20 hours a week and he was replaced by a younger worker.

18. On November 27, 2013, Ms. Johnson was approached by the H.R. Director, Beulah Prasand and told that her hours would be reduced to 20 hours a week and that she would no longer have fulltime status.

19. Ms. Johnson's duties were being transferred to a younger worker who had been with the company for less than one year.

20. When Ms. Johnson asked if she had done something wrong, Ms. Prasand said "no" and that Ms. Johnson was an excellent employee.

21. When Ms. Johnson asked if she could pick up other duties to retain her fulltime status, Ms. Prasand told her "no".

22. The next week, Ms. Johnson spoke with Ms. Prasand again and asked if she could receive severance pay since her job was being dissolved. Ms. Prasand said it sounded like a possibility but she would have to get it approved by the CEO (Mr. Gerrage, age 52, who had just been fired) and the CFO.

23. Ms. Johnson told Ms. Prasand that she was concerned because she would not be eligible for Medicare until April 2014 when she turned 65.

24. Ms. Prasand got back to Ms. Johnson a week later and told her the answer was "no" to severance pay. They would "retire" Ms. Johnson on January 17, 2014. However, Ms. Johnson could take 32 hours per week of her vacation time which would get her close to her 65th birthday.

25. This was Ms. Johnson's only option.

26. She was officially terminated on April 5, 2014, approximately one month before her 65th birthday.

27. On information and belief, Ms. Johnson was terminated because of her age.

28. Over a few short years, PCS created a pattern of discriminating against its employees on the basis of age by terminating or otherwise forcing employees over the age of 60 to retire early without providing any legitimate reason for their termination.

29. Plaintiff timely filed her statutorily required action with the Equal Employment Opportunity Commission (EEOC) for their ADEA and UADA claims.

30. The EEOC issued its Notice of Right to Sue to Ms. Johnson on June 10, 2015.

## FIRST CAUSE OF ACTION
### (Violation of the Age Discrimination in Employment Act 29 U.S.C. § 621)

31. Plaintiff realleges and incorporates by reference herein the allegations of all foregoing paragraphs.

32. Because Plaintiff was over the age of 40 during the time of discrimination and harassment, they all belonged to the protected age group class as set forth in 29 U.S.C. § 631.

33. The reasons set forth by PCS for Plaintiff's termination are merely pre-textual. Ms. Johnson performed her job in a satisfactory manner prior to her termination.

34. In fact, Ms. Johnson was never given a reason for her termination. It was even stated by Ms. Prasand, the H.R. Director, at the time of Ms. Johnson's termiantion that Ms. Johnson was an 'excellent employee'.

35. Employees at PCS were regularly treated differently based on their age. In fact, employees were separated according to their years of experience at PCS in a leadership meeting. At that meeting, Ms. McKenna had one of the highest number of years employed at PCS.

36. PCS and its employees repeatedly demonstrated negative bias towards older employees.

5

37. Many employees were aware that they could be facing termination because of their age and they were worried.

38. Comments and actions by younger PCS employees created a feeling that older employees were not appropriate in the workplace.

39. Plaintiff was dismissed despite her qualifications, skills, and abilities.

40. Plaintiff was ultimately replaced by a much younger person.

41. Plaintiff had far more training and experience than those whom replaced them. In fact, Ms. Johnson had 36 years of seniority over the employee who replaced her and who had been with the company for less than one year.

42. Ms. Johnson was not given an opportunity to take on other duties or another job when her hours were reduced.

43. None of the Plaintiffs were given an opportunity to improve their alleged deficiencies.

44. Starting in 2013, PCS began to systematically rid the company of older higher wage employees. At least 12 employees at PCS who were in their 50s and 60s were either terminated, forced into retirement, demoted or forced to take a pay-cut during that time.

45. In light of the number of terminations, it was clear that PCS was actively reducing its force of older and higher paid individuals in an egregious manner.

46. All of these employees were replaced by workers with less experience, some with less than one year of experience.

47. A causal link exists between Plaintiff's termination and her age.

48. PCS deliberately, intentionally and knowingly discharged the Plaintiffs because of their age, and knew that or showed reckless disregard for whether the conduct was unlawful.

49. PCS's terminations of Plaintiffs was a willful violation of the ADEA.

50. As a result of PCS's actions, Plaintiffs have suffered damages, including loss of wages, 401K contributions, and loss of benefits including health, dental, life, and disability insurance.

## SECOND CAUSE OF ACTION
### (Violation of Utah Antidiscrimination Act U.C.A. 34A-5-106).

51. Plaintiff realleges and incorporates by reference herein the allegations of all foregoing paragraphs.

52. Plaintiff belongs to the protect disability group class as set forth in U.C.A. § 34A-5-106.

53. An employer is prohibited from terminating or retaliating against, harassing, or discriminating in conditions of employment against a person otherwise qualified because of age.

54. Plaintiff is otherwise qualified for the position.

55. Ms. Johnson has worked competently at PCS for over 36 years and was told by Ms. Prasand, the H.R. Director, when she was terminated that she was an excellent employee.

56. Ms. Johnson was terminated because of her age.

102. Such discrimination and adverse employment actions as based on age are prohibited under the UADA.

103. As a result of PCS's actions, Plaintiffs have suffered damages, including loss of wages and employment benefits in an amount to be determined by the Court but believed to be in excess of $150,000.

## PRAYER FOR RELIEF

WHEREFORE PLAINTIFF prays for relief as follows:

1. For a determination by the Court on Plaintiff's First Cause of Action that Defendant has discriminated against Plaintiffs as proscribed under the ADEA;

2. For a determination by the Court on Plaintiff's Second Cause of Action that Defendant has discriminated against Plaintiffs as proscribed under the UADA;

3. For a determination that the Defendant's violations of the ADEA and UADA have been done willfully and with reckless disregard for Plaintiff's rights;

4. For back pay in an amount to be determined by the Court but believed to be in excess of $50,000 for the denial of Plaintiffs' salary and employment from the date of termination, including the loss of accrued pension and benefits, as allowed by the ADEA;

5. For front pay in an amount to be determined by the Court but believed to be in excess of $100,000;

6. For attorney fees and costs, as provided under the ADEA;

7. For liquidated damages equal to the amount of their back pay, as provided under the ADEA;

8. For costs and expenses; and

9. For such further relief as determined necessary or appropriate by the Court.

DATED and SIGNED this 4th of September, 2015.

JEFFS & JEFFS, P.C.

/s/ Randall L. Jeffs
*Attorneys for Plaintiff*